**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATIA MIRANDA<br><br>    Plaintiff,<br><br>v.<br><br>ARB GAMING, LLC d/b/a MODO.US<br><br>    Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

NATURE OF THE ACTION AND FACTUAL ALLEGATIONS ................................................1

   A.    The Problem Of Online Gambling.........................................................................1

   B.    Arb Gaming Operates An Illegal Gambling Website ...............................................4

   C.    Arb Gaming Has Scaled Up An Old Gimmick That Criminals
        Once Tried To Use To Evade Gambling Laws........................................................7

        1.    How Internet Cafés Worked. .......................................................................7

        2.    Modo.us Is An Online Version Of An Internet Café ...............................9

        3.    Arb Gaming's Admissions Establish That It Violates
               Massachusetts Laws Prohibiting Internet Cafés .......................................14

   D.    Arb Gaming Misleads The Public With False Claims Of Legality
        And Deceptive Omissions.................................................................................16

PARTIES ..........................................................................................................................16

JURISDICTION AND VENUE ........................................................................................17

CLASS ALLEGATIONS ...................................................................................................18

CAUSES OF ACTION ......................................................................................................20

PRAYER FOR RELIEF ....................................................................................................24

## NATURE OF THE ACTION AND FACTUAL ALLEGATIONS

1.      Plaintiff brings this action under Massachusetts General Laws, Chapters 93A and 137, and for unjust enrichment in the alternative, seeking recovery of Defendant Arb Gaming's unlawful gambling winnings and injunctive relief to shut down its illegal gambling website, Modo.us.

2.      The Arizona Department of Gaming—where Arb Gaming is headquartered—has recently described Arb Gaming as a "felony criminal enterprise[]," and has taken "decisive enforcement action" against Arb Gaming to shut down operation of that website in that state. Exhibit 1.  Arb Gaming's website is illegal in Massachusetts too, but it nonetheless remains accessible here.

**A.      The Problem Of Online Gambling**

3.      The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited from opioids.  For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $14 billion.  But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline.

4.      The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts spouses, partners, children, and employers.  Online gambling addiction also has massive social consequences, resulting in the drain on state government funds to address addiction, the rise in teenage online gambling addiction, and the rise in crime associated with online gambling addiction.

5.      During the last five years, online gambling websites have proliferated with no way to reduce the ensuing harm.  This shift is already evident with the gamblers seeking treatment, who tend to be younger, predominantly male, and raised on smart phones.

6.      This rise also includes a relatively new phenomenon: gambling addiction among minors under the age of 18.  Whereas brick-and-mortar casinos could take steps to exclude minors, the easy access to online gambling has made it easier for underage minors to participate in gambling.  Websites like Modo.us are designed to attract adolescents as well as adults, and are causing a sharp rise in online gambling addiction among minors.

7.      Treating online gambling addiction poses challenges that are different from other forms of addiction.  For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment.  Things are not so clear-cut when treating digital gambling because for most people, mobile devices have become a necessity of life.  So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal.  Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

8.      To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like Modo.us are unlicensed and unregulated.  A gaming license is a privilege that requires, among other things: (1) meeting state standards; (2) background checks on company officers and directors; (3) adherence to responsible gaming programs; (4) anti-money laundering measures; and (5) myriad other

requirements concerning data privacy, security, and responding to customer complaints. Defendants dodge all these requirements. As one gambling treatment provider warned, "[u]nregulated platforms [like Modo.us] can pose significant risks for players struggling with gambling addiction. The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

9.     For example, Arb Gaming accepts credit cards to pay for gambling, in violation of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367. This has caused numerous people to rack up massive debt gambling on Modo.us.

10.    Arb Gaming also deprive Massachusetts state and local governments of tax revenues that legitimate, regulated casinos pay.

11.    The bottom line is that Arb Gaming lets people play online casino games and wager real money while skirting regulation and licensing, offering inadequate player protections, exploiting adolescents, and siphoning revenue from state governments.

12.    Against this backdrop, it is a breathtaking display of chutzpah and lawlessness for Arb Gaming to operate in Massachusetts, where gambling is strictly regulated to minimize the social costs of gambling.

13.    In Massachusetts, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, and poker, and websites that use fake "sweepstakes" as a pretext for gambling. *See* 940 Massachusetts Code of Regulations, chapter 30 *et seq.*; Mass. Gen. Laws Ann. ch. 271, § 5B.

**B.      Arb Gaming Operates An Illegal Gambling Website**

14.     Arb Gaming operates a popular gambling website available at Modo.us.  Arb Gaming states that it offers "Hundreds of Casino-Style Games," like blackjack, slots and other "classic table games."

15.     The website offers "live" table games where online players interact directly with live dealers visible via a webcam to play games like blackjack and roulette:





4

16.    Just like one would see on the floor of a brick-and-mortar casino in Las Vegas, Arb Gaming also offers digital slot machines. They come in a wide variety of styles and themes, such as the examples shown below:





17.     Modo.us also contains a detailed explanation of the "volatility" of its slot
machines, which is a common term used in the casino industry to describe how frequently a slot
machine will hit a winning combination and the average payout size a gambler can expect:



18.     This is not just some harmless video game that simulates gambling. Website users
can gamble up to **$10,000 or more per day** (See Ex. 1 at § F.2.), and Arb Gaming violates the
Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367, by accepting credit
cards for gambling.

### C.    Arb Gaming Has Scaled Up An Old Gimmick That Criminals Once Tried To Use To Evade Gambling Laws

19.    Arb Gaming will ask the Court to disbelieve its own eyes and conclude that Modo.us is not really a gambling operation, but instead offers legal "sweepstakes."  That is an old gimmick that was once popular among criminals in the early 2000's. As detailed below, courts and law enforcement agencies consistently determined that the same business model Arb Gaming utilizes today is illegal gambling. Arb Gaming's position that it offers "sweepstakes" also is an admission that it violates Massachusetts laws prohibiting the use of sweepstakes as a pretext for illegal gambling.

### 1.    How Internet Cafés Worked.

20.    The early 2000's saw a nationwide crime trend where individuals attempted to evade gambling laws by offering gambling at so-called "Internet cafés."  These operations—often located in suburban strip malls— "promoted" the sale of products such as Internet time or long-distance telephone minutes by offering "free" sweepstakes entries to customers.  When customers purchased the product, they received a corresponding number of "sweepstakes" points for each dollar spent.  Customers then used those sweepstakes points to play "casino-style" slot machine games for cash prizes at computer terminals provided at the Internet cafés.

21.    Most states' gambling laws require three elements: prize, chance, and consideration.  By artificially separating the consideration from the chance to win real money, criminals believed that they could evade state gambling laws, while claiming that the activities were no different from the sweepstakes promotions offered by Publisher's Clearing House and McDonalds.

22.    Courts and state law enforcement officials in the United States, including in Massachusetts, repeatedly determined that such tactics were an obvious pretext and cover for

illegal gambling.  In fact, such Internet cafés are illegal in Massachusetts under 940 Mass. Code

Regs. 30.04, which governs illegal "Lotteries, Sweepstakes and de Facto Gambling

Establishments," and makes operation of Internet cafés a violation of  M.G.L. c. 93A, § 2(a).

Likewise, Mass. Gen. Laws Ann. ch. 271, § 5B, makes it unlawful to "conduct" or "promote a

sweepstakes that is conducted through the use of an entertaining display," which is precisely

what Internet cafés and Defendants' websites do.

23.    Court across the United States have conclusively determined that Internet café's

are illegal gambling operations.[1] For example, in Massachusetts, three individuals—including a

Fall River, Massachusetts City Counsil member—were indicted and charged in 2011 with

various gaming charges in connection with the operation of two Internet cafés.  The defendants

unsuccessfully argued that players were only paying for Internet time and that any gambling that

occurred involved legitimate sweepstakes offers.  The Massachusetts Attorney General stated

unequivocally that this conduct constituted illegal gambling.

24.    More recently, an individual in Mississippi was convicted of racketeering and

gambling charges in connection with an Internet café where—like here—customers could play

simulated games that resembled gambling programs, such as slot machines, keno, and poker.

Customers needed a "sweepstakes" code to play the game, but customers could not purchase a

---

[1] *See Lucky Tunes #3 LLC v. Smith* 2019 WL 13436322 (E.D. Tex. Nov. 18, 2019); *Texas v. Ysleta Del Sur Pueblo* 2015 WL 1003879 (W.D. Tex. Mar. 6, 2015); *State v. Fellows* 471 S.W.3d 555 (Tex. 2015); *Lucky Bob's Internet Café, LLC v. California Dept. of Justice*, 2013 WL 1849270 (S.D. Cal. 2013); *U.S. v. Davis* 690 F.3d 330 (5th Cir. 2012); *Telesweeps of Butler Valley, Inc. v. Kelly*, 2012 WL 4839010 (M.D. Pa. Oct. 10, 2012); *Moore v. Mississippi Gaming Com'n* 64 So.3d 537 (Miss. 2011); *Barber v. Jefferson County Racing Ass'n., Inc.* 960 So.2d 599 (Ala. 2006); *Jester v. State* 64 S.W.3d 553  (Tex. 2001); *Midwestern Enterprises, Inc. v. Stenehjem* 625 N.W.2d 234 (N. Dakota 2001); *Mississippi Gaming Com'n. v. Six Electronic Video Gambling Devices* 792 So.2d 321 (Miss. 2001).

sweepstakes code outright. Instead, customers received sweepstakes codes by purchasing something else in the store, such as food or phone minutes.

25.    In another example, the California Supreme Court addressed Internet café gambling in *People ex rel. Green v. Grewal*, 61 Cal. 4th 544 (2015), where the defendant sold Internet time on computer terminals. The defendant promoted the sale of Internet time and other products with a "sweepstakes" giveaway, wherein the defendant provided 100 "sweepstakes points" for each dollar spent, which could then be used to play games of chance. The defendants denied that the operation involved gambling because they were supposedly only selling computer time, and that the sweepstakes games were "not gambling" but instead a "promotional game." The Kern County District Attorney obtained a civil injunction for violations of California's gambling laws, and that injunction was affirmed on appeal. Notably, Arb Gambling likewise refers to the gambling on its website as "promotions."

26.    The Ohio Court of Appeals said it best when rejecting a similar sweepstakes scheme in *City of Cleveland v. Thorne*, 987 N.E.2d 731 (2013): "the justice system is not some lumbering oaf who must ignore the patently obvious gambling scheme apparent here simply because of a contrived separation between consideration and the scheme of chance." The court added, "there is no justification for ignoring the nature of the transaction simply because the system is designed in such a way as to artificially isolate one part of the illegal transaction from another. The justice system is not so blinded by chicanery."

## 2.    Modo.us Is An Online Version Of An Internet Café

27.    Like the criminal Internet cafés in operation a decade ago, Arb Gaming attempts to separate the element of consideration from gambling by offering a two-tiered system of virtual coins, both of which function like casino chips.

28.     The first type of virtual currency –called "Gold Coins" – can be used to play with no potential for redeeming any prizes.  When gambling with Gold Coins, a player can only win or lose Gold Coins, which can be used to place wagers on the various games.   The second type of virtual currency – called "Sweepstakes Coins" – can be used to play all of the same games on the website, except they carry real monetary value and can be redeemed for prizes and money.

29.     When a player first starts up an account on the website, they are given a free initial allotment of virtual Gold Coins, and a small number of virtual Sweepstakes Coins.  These coins are required for gameplay.   The chance for a player to win more coins or lose their bet is a fixed random chance and not skill-based.  All games require a "minimum bet" of coins before a player can play.  If a player runs out of coins or has less than the amount required for a minimum bet, they cannot play the game until they replenish their supply.

30.     Players can buy different packages of virtual Gold Coins for real currency, ranging from approximately $1 for 1,000 Gold Coins to $300 for 2 million Gold Coins.

31.     When a person purchases Gold Coins, they also receive Sweepstakes Coins, which is by far, the most common way for users to obtain Sweepstakes Coins.  The more Gold Coins a user purchases, the more Sweepstakes Coins the user also receives.  So, in effect, when a person buys Gold Coins, they are also buying Sweepstakes Coins as part of a package.

32.     Critically, ***the number of Sweepstakes Coins corresponds with the amount of real money spent or won***.  That is because there is essentially a 1:1 correlation between the number of dollars spent and the number of Sweepstakes Coins provided in each purchase.  So, for example, if someone spends $4.99 ostensibly to by Gold Coins, they get 5 Sweepstakes Coins; if they spend $9.99, they 10 Sweepstakes Coins, and so on:



33.     Likewise, Sweepstakes Coins are redeemable on a 1:1 basis.  For example, 100 Sweepstakes Coins can be redeemed for $100.

34.     Arb Gaming claims that no purchase is necessary to buy Sweepstakes Coins and that they are just a "bonus" added to the purchase of Gold Coins, but the reality is that generally, both coins must be purchased, and Arb Gaming will only sell them together as a package.  As noted above, claiming that sweepstakes tokens are just a free bonus is an old tactic that operators of Internet cafés unsuccessfully used to evade gambling laws.

35.     Players can use real currency to purchase additional virtual Gold Coins and Sweepstakes Coins through the website.  In this way, the purchase of virtual coins is like what

11

happens when a player purchases casino chips in a brick-and-mortar casino, which can then be used to place wagers at table games.

36.     There are several other factors that show that the true purpose of Arb Gaming's website is gambling, and that like the Internet cafés that preceded the launch of Arb Gaming's website, the use of the term "sweepstakes" is a pretext for gambling.

37.     First, the casino-like atmosphere and imagery associated with the website, as well as the use of the word "casino" in the website name, is evidence that the true purpose of the website is to promote gambling, as opposed to a sweepstakes promotion of some other good or service.

38.     Second, the duration of the "sweepstakes" promotion also demonstrates that the true purpose of the website is not to promote a bona fide consumer good or service, but instead gambling.  A traditional sweepstakes promotion is a limited term event designed to attract consumer attention to a product or business, and ordinarily expires after a few weeks or months. In contrast, Arb Gaming's purported "sweepstakes," runs perpetually.

39.     Third, the typical payout percentage for a temporary promotional sweepstakes is a small percentage of revenue earned by the company.  For example, the typical grand prize for McDonald's annual Monopoly-themed sweepstakes is usually about $1 million, which is a tiny fraction of the *billions* of dollars McDonald's earns each year.  By contrast, casinos typically pay out between 80-96 percent of their revenues (sometimes referred to as the "return to player" or "RTP").  Arb Gaming claims that the RTP for most of its games is 96-98%.

40.     Fourth, conditions designed to keep customers playing longer are indicative that the true purpose of the website is to keep them gambling, rather than a true sweepstakes aimed at promoting a product or service. Unlike traditional sweepstakes games where prizes can be

claimed immediately, Arb Gaming imposes restrictions on prize redemption that can cause website visitors to play longer. Specifically, website visitors must have at least 100 Sweepstakes Coins to obtain gift cards and 100 Sweepstakes Coins to obtain cash. This forces consumers to continue gambling and eventually lose their balance.

41.    Fifth, most if not all users of the website largely ignore their ample supply of Gold Coins in favor of playing Sweepstakes Coins, which is a clear indication that the Sweepstakes Coins, and not the supposedly promoted product (Gold Coins), are the primary subject of the transaction.

42.    In sum, the parallels between Arb Gaming's website and the Internet sweepstakes café business model—which courts have held are incontestably gambling—are clear:

✓ Both sell a "product" that comes with a commensurate number of "free" sweepstakes entries to play real money 'casino-style' games of chance in a 'casino-like' setting. Instead of the cafés selling a "prepaid phone card," Arb Gaming sells a virtual gold coin.

✓ Both run sweepstakes games perpetually and not on a limited and occasional basis, as is typical with legitimate promotional sweepstakes like the McDonald's monopoly sweepstakes.

✓ Both offer casino-like payouts, typically 90% or more of revenues, whereas legitimate promotional sweepstakes normally have very low prize to entrant ratios.

✓ Both offer several ways to get free entries without requiring a product purchase, such as by mailing a postcard to a designated P.O. Box address, although the number of free entries awarded through this method is a very low amount, if anything at all.

✓ The "casino-like atmosphere" of Modo.us further shows that the purpose of the website is "to legitimize illegal gambling." *U.S. v. Davis*, 690 F.3d 330, 339 (5th Cir. 2012).

3.    **Arb Gaming's Admissions Establish That It Violates Massachusetts Laws Prohibiting Internet Cafés**

43.    Arb Gaming claims that the gambling that occurs on its website is really just a "sweepstakes," and that the poker, blackjack, roulette, and other games of chance on the website are governed by the "Modo Casino US Sweepstakes Official Rules."

44.    Arb Gaming's admission that the websites offer "sweepstakes" further establishes that the website is unlawful.

45.    The Massachusetts legislature passed laws specifically outlawing the use of fake "sweepstakes" to evade state gambling laws.

46.    940 Massachusetts Code of Regulations, chapter 30 *et seq.*, governs "Unlawful, Lotteries, Sweepstakes and de Facto Gambling Establishments."  Chapter 30.04 provides as follows:

> (1) It is an unfair and deceptive act or practice in violation of M.G.L. c. 93A, § 2(a) for a person to solicit or accept payment for a chance to win a prize.
> (2) With respect to a business or a transaction that involves or purports to involve both a chance to win a prize and the sale or purported sale of a good or service, it is an unfair and deceptive act or practice in violation of M.G.L. c. 93A, § 2(a) for any person to engage in a business or engage in a transaction where a gambling purpose predominates over the *bona fide* sale of *bona fide* goods or services.

47.    This provision applies to any business or entity, "physical or otherwise," and thus includes online businesses.  *See id.* at Ch. 30.03 (defining "Establishment").

48.    The term "sweepstakes" includes any game or promotion where a person may become eligible to receive a prize, "with or *without* consideration."  *Id.* (defining "Sweepstakes") (emphasis added).  So, any argument by Arb Gaming that no purchase is necessary to participate in the sweepstakes is irrelevant.

49.    As explained by the Massachusetts Supreme Court, the Massachusetts Attorney General has engaged in a well-publicized effort to "curb the proliferation—and secure the

regulation—of online gambling ….." *New England Internet Café, LLC v. Clerk of Superior Court for Criminal Business in Suffolk Cnty.*, 462 Mass. 76, 79 (2012).  In response to arguments that "such gaming involves legitimate sweepstakes offers, the Attorney General has stated her unequivocal position that it constitutes illegal gambling." *Id.*

50.     Arb Gaming "solicit[s] or accept[s] payment for a chance to win a prize" when it sells Gold Coins with Sweeps Coins, which Arb Gaming states can be redeemed for "prizes."

51.     Given that Arb Gaming repeatedly describes its websites as offering "casino-style" gaming, the "gambling purpose" of the website necessarily "predominates" over any purported non-gambling offerings.

52.     Arb Gaming's purported sweepstakes is further illegal under Mass. Gen. Laws Ann. ch. 271, § 5B, which provides in relevant part as follows:

> It shall be unlawful for any person to knowingly possess with the intent to operate, or place into operation, an electronic machine or device to: (1) conduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize; or (2) promote a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

53.     "Any person who violates this section shall be punished by a fine of not more than $250,000 per electronic machine or device placed into operation or by imprisonment in state prison for not more than 15 years, or by both such fine and imprisonment." *Id.* at § 5B(d).

54.     This statute is consistent with 940 Mass. Code Regs. 30.04, inasmuch as the term "sweepstakes" includes any game in "which, *with or without* payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based on chance."  Mass. Gen. Laws Ann. ch. 271, § 5B(a).

55.     The statute also applies to online gaming that simulates casino gambling, because the term "entertaining display" means any "visual information" that "takes the form of actual

game play or simulated game play," and the definition of "electronic machine or device" includes screen and "server based" technology that "utilize[s] software" and "computer game[s]." *Id.*

### D. Arb Gaming Misleads The Public With False Claims Of Legality And Deceptive Omissions

56.    Arb Gaming also engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing confusion that participation in Modo.us is legal in Massachusetts.

57.    Arb Gaming states in its terms and conditions, in bold and all caps letters, that **"THIS WEBSITE AND THE SERVICES PROVIDED HEREIN DO NOT OFFER 'REAL MONEY GAMBLING.'"** This statement falsely suggests that what transpires on Modo.us somehow falls outside the legal definition of "gambling," when that is not the case.

58.    Arb Gaming fails to disclose that its entire business model is based on Internet cafés, an indisputably illegal practice.

59.    Arb Gaming's Terms and Conditions also include a list of fifteen excluded states where its website is not available.[2]  However, Massachusetts is not included in that list, falsely implying that the website is legal in Massachusetts.

### PARTIES

60.    Plaintiff Katia Miranda is domiciled in Massachusetts and has frequently gambled on the subject website while in Massachusetts.  Plaintiff lost money on Arb Gaming's illegal gambling websites within the last four years.  As a result, she suffered an injury in fact resulting in the loss of money and/or property.

---

[2] As of October 2025, the list of excluded states is Arizona, Connecticut, Delaware, Idaho, Louisiana, Maryland, Michigan, Montana, Nevada, New Jersey, New York Pennsylvania, Rhode Island, Washington, and West Virginia.

61.    Plaintiff used the website under the mistaken belief—caused by Arb Gaming's misrepresentations and omissions—that the website was a legal form of "sweepstakes" and not unlawful gambling.

62.    Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case, and has no conflict of interest with the proposed class members.

63.    Defendant Arb Gaming is a Delaware limited liability company headquartered in Scottsdale, Arizona. Through its website, Arb Gaming conducts business in Massachusetts.

## JURISDICTION AND VENUE

64.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from defendant.

65.    The Court has personal jurisdiction over Arb Gaming because it regularly and intentionally engages in gambling in Massachusetts.

66.    Modo.us is an interactive websites used for commercial purposes—specifically, gambling.

67.    The website is accessible and made available in Massachusetts.

68.    The website appeals to, and profits from, an audience in Massachusetts, and Massachusetts residents form a significant portion of the websites' customer base.

69.    It was foreseeable that Massachusetts residents would use the websites because Arb Gaming knows that Massachusetts residents frequently gamble on the website and that they

will continue to do so. Arb Gaming knows that people in Massachusetts use the website because there is widely available technology that allows websites to detect the location of a website visitor based on the website visitor's IP information, including the state in which they are located. Arb Gaming utilizes this technology on the subject websites and blocks users from certain states. However, Arb Gaming made an affirmative decision not to use that technology to block Massachusetts website visitors because that would prevent Arb Gaming from profiting from gambling in Massachusetts, a significant market in the United States.

70.    The Terms and Conditions of the subject websites purport to prohibit the use of the websites from certain states. Massachusetts is not one of those prohibited states.

## CLASS ALLEGATIONS

90.    Plaintiff seeks to represent classes defined as:

All persons in Massachusetts who purchased Gold Coins on Modo.us;

91.    Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be modified by amendment or in the motion for class certification, including through the use of subclasses.

92.    Class members are so numerous that their individual joinder herein is impracticable. On information and belief, the number of class members is in the tens of thousands, if not more. The precise number of class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

93.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)    whether Modo.us offers unlawful gambling;

(b)    whether Modo.us offers unlawful sweepstakes;

     (c)     whether Arb Gaming has been unjustly enriched by the operation of its website;

     (d)     whether Plaintiff and Class members were injured by Arb Gaming's conduct;

     (e)     whether Plaintiff and Class members are entitled to recover triple their gambling losses;

     (f)     whether Plaintiff and the other members of the Class are entitled to an injunction shutting down operation of the website.

94.     The claims of the named Plaintiff are typical of the claims of the class members because they all arise from the unlawful gambling made available on Modo.us.

95.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of class members she seeks to represent. Plaintiff has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

96.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of class members. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Arb Gaming's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Arb Gaming's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### First Cause of Action
### Massachusetts General Laws Chapter 93A, § 2

97.     Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

98.     Plaintiff asserts this claim on behalf of herself and all class members

99.     Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

100.     Plaintiff, class members, and Arb Gaming are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

101.     Arb Gaming is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

102.     Arb Gaming is not incorporated or headquartered in Massachusetts. Arb Gaming has no property in Massachusetts.

103.     Arb Gaming engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

    a.  By operating its gambling website, Arb Gaming violates 940 Massachusetts Code of Regulations, chapter 30.04's prohibition against "Unlawful, Lotteries, Sweepstakes and de Facto Gambling Establishments."

    b.  By operating its website, Arb Gaming violates Mass. Gen. Laws Ann. ch. 271, § 5B.

    c.  By operating unlawful, online gambling establishments without the requisite licensing and approval from the Massachusetts Gaming Commission,

      d.   By advertising the website in a manner that has the tendency or capacity to deceive or confuse users into believing that the activities on the websites are lawful, when in fact they are not.

104.    Massachusetts aggressively regulates all forms of gambling.  One reason it does so is to prevent consumers from being cheated by professional gambling operations, to minimize the social harm of gambling, and to generate state revenue.

105.    Because Arb Gaming's website operates as if it is not subject to gambling regulations, the website does not comply with all the regulations that govern gambling operations.

106.    The utility of the Arb Gaming's conduct is outweighed by the gravity of harm to the public, because the social costs of gambling are well known and adversely affect the public interest.  Arb Gaming's operation of their websites offends an established public policy that gambling is generally illegal, with narrow and specific exceptions for certain regulated gambling operations.  Arb Gaming's operation also unfairly makes money from consumers by evading the strict regulation and control of Massachusetts' gambling statutes.

107.    Operating an unlicensed and unregulated gambling operation—or attempting to exploit perceived loopholes in gambling laws—is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

108.    The social cost of gambling is substantial, and the injury caused to consumers is not outweighed by any countervailing benefits to consumers or competition.  The conduct at issue here provides no benefits to consumers or competition.  Arb Gaming avoids Massachusetts' extensive gambling regulations that reputable and licensed gambling operations must comply with, and withhold state revenues from gambling that Defendants' regulated competitors must

pay.  The injury is not one that consumers can reasonably avoid, especially if a person, a person's spouse, or a person's dependent struggles with gambling addiction.

109.    Arb Gaming's conduct at issue here is also tethered to underlying statutes and regulations prohibiting unlicensed and unregulated gambling, and violates the policy or spirit of antitrust law.

110.    Arb Gaming's conduct also is unfair to the extent that Arb Gaming exploits perceived loopholes in gambling laws that Arb Gaming believes allow it to portray its gambling operation as a "sweepstakes" while in fact offering conventional—and highly regulated— gambling games like slots and poker.

111.    Arb Gaming's conduct also constitutes an unfair business practice because Arb Gaming targets and exploits vulnerable and addicted players, including minors, while falsely denying that its website involves gambling.

112.    Plaintiff and class members have suffered injury in fact, including economic injury, and actual damages resulting from Arb Gaming' operation of illegal gambling websites.

113.    Plaintiff seeks all available relief under this cause of action, including injunctive relief to shut down operation of the website and statutory damages.

**Second Cause Of Action**
**Massachusetts General Laws Chapter 137, § 1**

114.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

115.    Plaintiff asserts this claim on behalf of herself and all class members.

116.    The games of chance offered on Arb Gaming's website are "cards, dice or other game[s]" within the meaning of the statute.

117.    Arb Gaming's website is not "licensed gaming establishments pursuant to chapter 23k or sports wagering conducted pursuant to chapter 23N" and therefore do not fall within the statutory exclusions under chapter 137.

118.    Plaintiff and class members have lost money to Arb Gaming while playing games of chance on the website

119.    Plaintiff and class members have paid or delivered money or other things of value to Arb Gaming for or in consideration of a chance of obtaining money, prizes, or things of value.

120.    Plaintiff seeks on behalf of herself and all other class members, all relief available under this statute, including treble damages.

**Third Cause Of Action**
**Unjust Enrichment**

121.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

122.    Plaintiff asserts this claim on behalf of herself and all class members.

123.    To the extent required by law, this cause of action is alleged in the alternative to legal claims.

124.    Plaintiffs and class members conferred a benefit on Arb Gaming in the form of the gross revenues Arb Gaming derived from its role in the operation of the websites.

125.    Arb Gaming has been unjustly enriched in retaining the unlawful gambling revenues derived from Plaintiffs' and the class members.  Retention of such revenues under these circumstances is unjust and inequitable because (1) Arb Gaming falsely implies to website users that its websites do not involve illegal gambling; (2) Arb Gaming profits from and exploits individuals who struggle with gambling addiction; and (3) Arb Gaming's business model depends on exploiting perceived loopholes in state gambling law.

126.     Arb Gaming benefits financially from the unlawful websites and retain financial benefits from consumers who lose money on those websites.

127.     There is a direct relationship between the detriment experienced by Plaintiffs and class members and the benefits that Arb Gaming obtains as a result of its operation of the website.  The detriment to class members and Arb Gaming's benefits all flow from the challenged conduct at issue here: namely, the operation of unlawful gambling website.

128.     Arb Gaming's conduct in operating and marketing the website was a proximate cause of Plaintiffs' and class members' injuries.

129.     Plaintiff and class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Arb Gaming obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the putative class members, pray:

A.     For injunctive relief shutting down the operation of Arb Gaming's unlawful gambling websites, Modo.us.

B.     Recovery of actual and statutory damages, including treble damages.

C.     Recovery of non-restitutionary disgorgement of profits.

D.     An award of fees and costs, to the extent permissible by law.

E.     For such other and further relief as the Court may deem proper.

Dated: October 30, 2025                    **SMITH KRIVOSHEY, PC**

By: _____
              Joel Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (BBO 712418)

867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (pro hac vice forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiffs*