UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATIA MIRANDA, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 25-cv-13206-ADB |
| ARB GAMING, LLC, | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, Plaintiff Katia Miranda ("Miranda") has sued Defendant Arb Gaming, LLC ("Arb") for allegedly running an unlawful online gambling operation, [ECF No. 1 ¶¶ 97–129], and seeks to represent a class of consumers who have made purchases on Arb's website, Modo.us, [id. ¶¶ 90–96]. Currently before the Court is Arb's motion to compel arbitration, [ECF No. 12 ("motion")], in support of which it contends that Miranda's claims are subject to binding arbitration on an individual basis pursuant to Arb's Terms of Use ("Terms"), [ECF No. 13 at 5]. Miranda opposes the motion, arguing that Arb's Terms were illusory and therefore do not constitute a legally binding contract. [ECF No. 16 at 5]. After careful consideration, Arb's motion is **DENIED**.

## I. BACKGROUND

The following facts are based on the evidence submitted by the parties in connection with Arb's motion. Except as otherwise noted, they are undisputed.

Miranda created an account on Arb's website, Modo.us, on or about October 2, 2023. [ECF No. 14 ¶ 17]. At the time, and at all relevant times since, Arb has required users to agree

to its Terms as part of the account creation process. [Id. ¶ 10]. Arb presented its Terms through a "clickwrap" form, wherein users were required to check a box stating that they agreed to the Terms after entering their personal information and before clicking "Submit," but were not required to scroll through or read the Terms. [Id. ¶ 10–11]. Miranda does not dispute that she agreed to the Terms presented (which had been last updated September 13, 2023) when she created her account. See generally [ECF No. 16].

Miranda subsequently used Arb's platform for approximately three months. [ECF No. 14 ¶ 17]. On December 29, 2023, Arb amended its Terms. [ECF No. 14-1 at 2]. When it did so, it required users to re-agree to the amended Terms upon their next log-in to the website. [ECF No. 32-1 ¶ 9]. Arb's records indicate that Miranda agreed to the amended Terms on December 30, 2023. [ECF No. 32-1 at 7]. Miranda last accessed Arb's website on or about January 17, 2024. [ECF No. 14 ¶ 17].

The Terms active when Miranda created her account and the later updated Terms contained identical mandatory arbitration provisions made applicable to all past, present, and future disputes. [ECF No. 14 ¶ 15]; [ECF No. 32-1 at 22–23 (September 13, 2023 Terms)]; [ECF No. 14-1 at 15–16 (December 29, 2023 Terms)]. The arbitration provisions adopted the American Arbitration Association ("AAA") Rules and contained a delegation clause specifying that any "[d]ispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate" would also be decided by an arbitrator. [ECF No. 32-1 at 22–23]; [ECF No. 14-1 at 15–16].

Both sets of Terms agreed to by Miranda also contained a unilateral modification clause that stated, in relevant part:

> We reserve the right to revise these Terms at any time. You agree that we have this unilateral right, and that all modifications or changes are in force and enforceable immediately upon posting. An updated or revised version of these Terms immediately and retroactively supersedes any prior versions immediately upon posting, and the prior version is of no continuing legal effect unless the revised version specifically refers to the prior version and keeps the prior version or portions thereof in effect.

[ECF No. 32-1 at 12]; [ECF No. 14-1 at 5].

Pursuant to this unilateral modification clause, Arb has made numerous and extensive changes to the Terms' arbitration and dispute resolution procedures since Miranda stopped using the platform in early 2024. These changes have included, inter alia: (1) imposing new mandatory pre-arbitration dispute resolution procedures in September 2024, [ECF No. 15-2 at 18–19], and expanding them in December 2025, [ECF No. 15-3 at 20–22]; (2) changing the process for selecting an arbitrator and the arbitration rules from AAA to JAMS in September 2024, [ECF No. 15-2 at 20–21], and further modifying the applicable JAMS rules in December 2025, [ECF No. 15-3 at 24–26]; (3) imposing new "mass arbitration" requirements in September 2024, [ECF No. 15-2 at 20], and expanding them in December 2025, [ECF No. 15-3 at 26]; (4) granting new appeal rights from certain arbitration decisions that affect Arb's business, [ECF No. 15-2 at 21]; and (5) imposing more stringent consumer opt-out requirements, [ECF No. 15-2 at 19].

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted primarily to "overcome judicial hostility to arbitration agreements," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995). It "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v.

Cardegna, 546 U.S. 440, 443 (2006)). Under the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Because "arbitration is a matter of contract," Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 80 (1st Cir. 2018) (quoting AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 648 (1986)), "general principles of state contract law control the determination of whether an agreement to arbitrate exists," id. (citing Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987)).

Section 4 of the FAA, 9 U.S.C. § 4, "allows a party aggrieved by another party's refusal to arbitrate to petition a district court to compel arbitration in accordance with the parties' preexisting agreement." Nat'l Fed'n of the Blind, 904 F.3d at 79. A party seeking to compel arbitration bears the burden of proving "that a valid agreement to arbitrate exists, the movant has a right to enforce it, the other party is bound by it, and that the claim asserted falls within the scope of the arbitration agreement." Oyola v. Midland Funding, LLC, 295 F. Supp. 3d 14, 16–17 (D. Mass. 2018) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 293 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019)). In deciding a motion to compel arbitration, "district courts should apply the summary judgment standard," which requires them to "construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).

## III. DISCUSSION

Arb argues that Miranda must arbitrate her claims against it because, in accepting the Terms, she agreed to an arbitration provision that covered all her claims and delegated the question of arbitrability to an arbitrator. [ECF No. 13 at 11–12]. Miranda raises two arguments

in response, contending that (1) Arb has failed to meet its burden to show the existence of an arbitration agreement because it did not attach the applicable agreement to its motion, and (2) the Terms do not constitute a binding contract because they are illusory and therefore lack consideration. The Court addresses each argument in turn.

### A. Submission of the Relevant Agreement

Miranda first argues that Arb has failed to meet its burden to prove "that a valid agreement to arbitrate exists," Oyola, 295 F. Supp. 3d at 16–17, because Arb failed to submit the relevant agreement with its motion. [ECF No. 16 at 8–10]. Miranda relies on the fact that Arb's original motion attached only the December 2023 version of the Terms, which were not in effect when Miranda created her account in October 2023, and that Arb originally provided no evidence of the content of the earlier Terms to which Miranda initially agreed. [Id.]. In its reply, Arb argues that the December 2023 Terms are themselves binding on Miranda because she accepted them when she visited the website after December 29, 2023. [ECF No. 32 at 6–7]. It also attaches the September 2023 Terms which were in effect when Miranda created her account, showing that they contain an identical arbitration provision. [ECF No. 32-1 at 9–31].

On this issue, the Court agrees with Arb. The record appears to indicate that "the operation of the Platform" required Miranda to manually accept the updated Terms when she signed in to the website after December 29, 2023, meaning that she manifested her assent to those Terms to the same extent as the original Terms. [ECF No. 32-1 ¶ 9]; see [id. at 7]. Moreover, although Arb omitted the September 2023 Terms from its original motion, it cured

that omission by submitting those Terms with its reply brief.[1] Therefore, even assuming, arguendo, that Miranda never assented to the December 2023 Terms, the record demonstrates that the arbitration provision in the original Terms to which Miranda agreed is identical in all relevant respects to that in the December 2023 Terms. See [ECF No. 32-1 at 70–71 (redline comparison of September 13, 2023 Terms and December 29, 2023 Terms)]. Therefore, Arb has offered sufficient evidence to establish that Miranda manifested her assent to the relevant arbitration provisions.

**B. Illusoriness**

Miranda next argues that the Terms to which she assented do not constitute a properly formed contract because the unilateral modification provision renders any promise by Arb "illusory," and the Terms therefore lack consideration. [ECF No. 16 at 10–15]. In reply, Arb argues that (1) Miranda's illusoriness argument must be resolved by the arbitrator pursuant to the delegation clause because it is a challenge to the validity of the contract as a whole, [ECF No. 32 at 8–9], and (2) the illusoriness argument fails on the merits because the contract is not illusory, [id. at 9–13]. Before the Court can reach the merits of Miranda's illusoriness challenge, it must first determine whether this issue is subject to resolution by the Court or an arbitrator.

---

[1] Although a party may not generally submit new evidence in a reply brief, that rule is "flexible" and subject to the Court's discretion. Insulet Corp. v. EOFlow Co., Ltd., 819 F. Supp. 3d 30, 35 (D. Mass. 2026). Absent "additional reasons . . . counsel[ing] in favor of" disregarding this evidence, id., the Court sees no harm in considering it here, given that (1) Arb does not raise any new grounds for relief by including it, (2) Miranda has had the opportunity to respond to this evidence by filing a sur-reply, [ECF No. 33], and (3) in her sur-reply, Miranda does not object to the Court's consideration of this evidence, see generally [ECF No. 35].

1. Proper Decision-Maker

The parties do not dispute that the arbitration provision at issue contains a delegation clause specifying that any "[d]ispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate" must be decided by an arbitrator. [ECF No. 32-1 at 22–23]; [ECF No. 14-1 at 15–16]. In general, where "a contract contains a 'clear and unmistakable' delegation by the parties of the question of arbitrability to an arbitrator, 'the courts must respect the parties' decision as embodied in the contract,' and leave to the arbitrator to decide whether 'the arbitration agreement applies to [the] particular dispute' between them." Morales-Posada v. Cultural Care, Inc., 141 F.4th 301, 309 (1st Cir. 2025) (alteration in original) (quoting Bossé v. New York Life Ins., 992 F.3d 20, 27–28 (1st Cir. 2021)). This principle allows parties to delegate issues regarding the validity of an arbitration agreement to an arbitrator, so long as the plaintiff does not "challenge[] the delegation provision specifically." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 72 (2010).

"[T]here's an important distinction," however, "between arguments challenging the validity of an agreement and those challenging an agreement's formation." Nat'l Fed'n of the Blind, 904 F.3d at 80 (citing Buckeye, 546 U.S. at 444 n.1). While the former may be delegated to an arbitrator, the latter must always be resolved by the Court, even when an agreement contains a delegation clause. Toth v. Everly Well, Inc., 118 F.4th 403, 410 (1st Cir. 2024). This rule exists in recognition of the fact that "[i]f an 'agreement between [the parties] was [not] concluded,' neither was an arbitration agreement within that contract." Id. at 409 (quoting Buckeye, 546 U.S. at 444 n.1).

Miranda argues that her illusoriness challenge presents an issue for the Court to resolve because it negates the essential contract ingredient of consideration, and therefore it raises an

issue of contract formation. [ECF No. 16 at 10–13]. Arb argues in reply that Miranda's argument presents a validity challenge subject to the delegation clause, as it is similar to arguments plaintiffs have raised in other cases which courts have characterized as validity challenges. [ECF No. 32 at 8–9, 11–12].

Whether an argument is properly characterized as a "validity" challenge or a "formation" challenge is a question of state contract law. See Nat'l Fed'n of the Blind, 904 F.3d at 81 (treating proper characterization of illusoriness challenge as a question of state law). The various versions of the Terms contain different choice-of-law provisions, but Miranda argues, and Arb does not appear to contest, that these preliminary issues should be decided under Massachusetts law. [ECF No. 16 at 11–12]; [ECF No. 32 at 8–9]. The Court will therefore determine the proper characterization of this challenge under Massachusetts contract law.

After reviewing the relevant authority, the Court finds that Miranda's illusoriness argument raises a formation challenge under Massachusetts law, thus presenting a matter for the Court to resolve. In National Federation of the Blind, the First Circuit addressed this precise issue and held that when a plaintiff "assert[s] that an agreement is illusory," she "raises a challenge to the formation of the agreement because when an agreement is illusory it is unsupported by consideration, and thus, 'there is no contract.'" 904 F.3d at 81 (quoting Lizalde v. Vista Quality Mkts., 746 F.3d 222, 225–26 (5th Cir. 2014). Although that Court applied Texas contract law, it noted that "the principles governing our decision are so fundamental and basic, the outcome does not change whether we apply Massachusetts or Texas law." Id. at 80 n.13 (first citing Momentis U.S. Corp. v. Weisfeld, 2014 WL 3700697, at *2 (Tex. App. July 22, 2014); and then citing Ajemian v. Yahoo!, Inc., 987 N.E.2d 604, 612 (Mass. Ct. App. 2013)). Consistent with the First Circuit's guidance in National Federation of the Blind, other sessions of

this Court applying Massachusetts law have held that "[i]n bringing forward an 'illusory' argument, Plaintiffs are invoking a formation challenge." Pizza Hazel v. Am. Express Co., No. 24-cv-12505, 2025 WL 2682394, at *6 (D. Mass. Sept. 19, 2025).

These conclusions accord with basic contract principles and Massachusetts authority. An "illusoriness" argument like the one Miranda raises is just one species of challenge to the existence of consideration—one which invokes the principle that "a promise that binds one to do nothing at all is illusory and cannot be consideration." A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 95 N.E.3d 547, 557 (Mass. 2018) (quoting Graphic Arts Finishers, Inc. v. Boston Redev. Auth., 255 N.E.2d 793, 796 (1970)). Consideration is one of the three "essential elements of an executory contract," and is just as fundamental to contract formation as an "offer" and "acceptance." Quinn v. State Ethics Comm'n., 516 N.E.2d 124, 127 (Mass. 1987). Thus, by arguing that the unilateral modification clause rendered Arb's purported obligations illusory, Miranda plainly challenges whether any contract was formed in the first place. See Toth, 118 F.4th at 410.

Arb's arguments to the contrary are not persuasive. Arb asserts that "Plaintiff's issues of contract 'formation' are contract validity issues," [ECF No. 32 at 8], but offers little to support that position. Arb cites several cases that it claims "explicitly rejected identical arguments made by Plaintiff here," but then acknowledges that "the basis for Plaintiff's argument is slightly different" than the arguments in the cases it cites. [Id. at 11]. Indeed, a review of Arb's cited cases shows that none of them meaningfully addressed the illusoriness issue presented here, and each turned on grounds unique to the contract doctrines asserted in those cases. In both M.M. v. VGW US, Inc., No. 25-cv-10514, 2026 WL 34452 (D. Mass. Jan. 6, 2026), and Boyle v. Sweepsteaks Ltd., No. 25-cv-00302, 2025 WL 1674480 (C.D. Cal. May 19, 2025), the plaintiffs

did not raise illusoriness issues at all and argued instead that the contracts were void for illegality. VGW, 2026 WL 34452, at *4–5; Boyle, 2025 WL 1674480, at *5. Both courts found that, because "the doctrine of illegality 'is grounded on considerations of public policy,'" it presents a bar to "enforcement rather than formation." Boyle, 2025 WL 1674480, at *5; see VGW, 2026 WL 34452, at *4–5 (same analysis). That conclusion has no bearing on the argument Miranda raises. Likewise, in M.M. v. Sweepsteakes Ltd., No. 25-cv-11481, 2025 WL 3240413 (D. Mass. Nov. 20, 2025), the court understood "the existence of the arbitration agreement [to] not [be] in dispute," and construed the plaintiff's argument as turning on "whether the arbitration clause itself is void." Id. at *1. Here, by contrast, the existence of a contract is plainly in dispute. See [ECF No. 16 at 8–9]. Accordingly, the Court rejects Arb's arguments and finds that it is the proper decision-maker to consider Miranda's argument that Arb's Terms are illusory and lack consideration.[2]

[2] For clarity's sake, the Court will also address one seeming tension in the case law, even though Arb does not raise the issue. In Toth, the plaintiff raised both validity and formation arguments against the arbitration agreement at issue, 118 F.4th at 410–16, including an argument on appeal that the contract was "illusory" because of a unilateral modification clause, id. at 415. Though it did not explicitly explain why, the First Circuit considered this argument in the portion of its opinion addressing the plaintiff's validity arguments. Id. Based on its apparent understanding that this argument, as presented, implicated contract validity rather than formation, the Court concluded that it was "a subject for an arbitrator and not a court." Id. Therefore, at first glance, Toth appears to be in tension with National Federation of the Blind and its explicit holding that "the issue of illusoriness goes to formation (and not to validity or enforceability)." 904 F.3d at 87–88. The First Circuit in Toth, however, evaluated the plaintiff's argument regarding the "illusory" nature of the unilateral modification clause only on "unconscionability" grounds and did not construe it as an argument about consideration (which the plaintiff had raised separately). 118 F.4th at 415. This construction followed the plaintiff's own framing in the district court, where she raised the unilateral modification clause only as a basis for unconscionability and never argued that it posed a formation issue, thereby waiving such an argument on appeal. See Plaintiff's Opposition to Defendants' Motion to Compel Arbitration at 16, Toth v. Everly Well, Inc., No. 23-cv-11043 (D. Mass. Jul. 24, 2023), ECF No.

2. Merits

Having concluded that it may address Miranda's illusoriness argument, the Court turns to the merits.

In general, an agreement which gives one party discretion to "perform [its obligations] or not, solely on the condition of whim," is considered "illusory" and cannot constitute a binding contract because it lacks consideration. 3 Williston on Contracts § 7:7 (4th ed.); see also A.L. Prime Energy Consultant, 95 N.E.3d at 557. Under Massachusetts law, an arbitration agreement is illusory if one party "ha[s] the power to require [the other party] to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement" without notice to the other party. Domenichetti v. Salter Sch., LLC, No. 12-cv-11311, 2013 WL 1748402, at *7 (D. Mass. Apr. 19, 2013).

"[T]he fact that one party has the unilateral right to modify that agreement," however, "does not automatically render the agreement illusory as long as the other party has fair notice of the changes." Pizza Hazel, Inc. v. Am. Express Co., No. 24-cv-12505, 2025 WL 3023060, at *7 (D. Mass. May 19, 2025) (citing Flores v. Nat'l Football League, 658 F. Supp. 3d 198, 215 (S.D.N.Y. 2023)), report and recommendation adopted, 2025 WL 2682394. "The crux of this issue is whether [one party] has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from a party who has already attempted to invoke it." Nat'l Fed'n of the Blind, 904 F.3d at 86.

35. The Court's holding in Toth therefore does not conflict with National Federation of the Blind's common-sense observation that challenging an agreement's consideration as illusory constitutes a formation argument.

Miranda argues that Arb's Terms are illusory because the unilateral modification clause gives Arb unlimited discretion to change any terms of the agreement, for any reason, at any time, retroactively, and without notice. [ECF No. 16 at 12–13]. Arb responds that its Terms are not illusory because Arb required Miranda and other users to "affirmatively accept all material updates to the Terms by clicking a checkbox" prior to continuing their use of the website. [ECF No. 32 at 10].

The Court agrees with Miranda. Arb's unilateral modification rights under the Terms are indistinguishable in all relevant respects from the rights that the First Circuit in National Federation of the Blind found precluded a contract from forming. Here, as in National Federation of the Blind, the Terms allow Arb to (1) "alter the terms . . . including the arbitration provision, 'at any time,'" 904 F.3d at 87; see [ECF No. 14-1 at 5 ("We reserve the right to revise these Terms at any time.")]; (2) make changes that take effect "immediately," with no prior notice or acceptance by the other party, 904 F.3d at 87; see [ECF No. 14-1 at 5 ("You agree . . . that all modifications or changes are in force and enforceable immediately upon posting.")]; and (3) "retroactively eliminat[e] its arbitration policy" if it wishes to do so, 904 F.3d at 87; see [ECF No. 14-1 at 5 ("An updated or revised version of these Terms immediately and retroactively supersedes any prior versions immediately upon posting, and the prior version is of no continuing legal effect")].

By their plain language, the Terms impose no binding obligations whatsoever upon Arb. Because of the unilateral modification clause, every promise ostensibly made by Arb in the Terms, including the reciprocal promise to arbitrate, is subject entirely to the "condition of whim," 3 Williston on Contracts § 7:7 (4th ed.), with no discernable limitation on Arb's ability to nullify it. Such promises which "bind[] one to do nothing at all [are] illusory and cannot be

consideration." A.L. Prime Energy Consultant, 95 N.E.3d at 557 (quoting Graphic Arts Finishers, 255 N.E.2d at 796). The Terms therefore fail to meet the basic definition of a contract—a "bargained-for exchange" with "offer, acceptance, and consideration," Quinn, 516 N.E.2d at 216—and consequently have no legally binding or enforceable effect.

Arb's counterarguments are unavailing. The fact that Arb chose to obtain assent when updating the Terms, [ECF No. 32 at 10], is irrelevant when determining whether the Terms as written are illusory. Though Arb claims it "prompt[ed] [users] to affirmatively accept all material updates," [id.], it points to nothing in the Terms that obligated it to do so, and its gratuitous decision cannot "reviv[e] a contract [which] was never formed for its lack of consideration," Nat'l Fed'n of the Blind, 904 F.3d at 87. Under Massachusetts law, only a benefit or detriment "offered by one party and accepted by the other as one element of the contract" can serve as consideration. Meng v. Trustees of Boston U., 693 N.E.2d 183, 185 n.2 (Mass. Ct. App. 1998) (quoting Fire Ins. Ass'n, Ltd. v. Wickham, 141 U.S. 564, 579 (1891)). Thus, where the agreement itself places no legally binding obligations on a party, it cannot manufacture consideration after the fact by unilaterally limiting its own conduct. Because the Terms, on their face, impose no binding obligations on Arb, "the agreement was illusory from the outset" and does not constitute a binding contract. Nat'l Fed'n of the Blind, 904 F.3d at 86.[3]

---

[3] Arb's argument that Miranda "was free to reject the[] [Terms] and stop using the Platform," [ECF No. 32 at 10], is similarly meritless. The First Circuit rejected this exact argument in National Federation of the Blind, finding that users' "ability to cancel their . . . memberships does not prevent [Defendant] from retroactively eliminating its arbitration policy, which is the critical inquiry for determining whether an agreement is illusory.'" 904 F.3d at 87; see also Pizza Hazel, 2025 WL 2682394, at *4 (rejecting similar argument because "'[e]ffective immediately' means precisely that—changes take effect immediately").

Because the Terms lack consideration, Arb has not shown "that a valid agreement to arbitrate exists." Oyola, 295 F. Supp. 3d at 16–17. It therefore may not compel Miranda to arbitrate her claims.

## IV. CONCLUSION

For the foregoing reasons, Arb's motion to compel arbitration, [ECF No. 12], is **DENIED**.

**SO ORDERED.**

September 14, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE